(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                :
THE DOLAN GROUP, VI, a New Jersey  :
General Partnership,            :
                                :
         Plaintiff,             :   Civil No. 05-1853 (RBK)
                                :
    v.                          :   **OPINION**
                                :
FRESENIUS USA MANUFACTURING     :
INC., a Delaware Corporation, et al., :
                                :
         Defendants.            :
_____ :

**KUGLER**, United States District Judge:

Presently before the Court is a motion by defendant Fresenius USA Manufacturing, Inc. ("Defendant") for partial summary judgment against plaintiff The Dolan Group, VI, LLC ("Plaintiff") seeking to strike the Plaintiff's claims for property damages, lost rent, and operating expenses arising out of a lease agreement between the parties. Additionally or alternatively before the Court is Defendant's motion for an order compelling Plaintiff to produce a damages report. For the reasons set forth below, the Court will deny both motions.

**I.      BACKGROUND**

Defendant assumed a ten-year lease for Plaintiff's industrial warehouse property located

1

at 111 Ikea Drive in Westampton Township, Burlington County, New Jersey ("the Premises"). Defendant used the Premises as a regional distribution center for its kidney dialysis product. The parties' lease agreement contained two provisions regarding the condition and maintenance of the Premises. Section 7 of the lease, the maintenance covenant, specified that Defendant agreed to keep the Premises "maintained in a good, safe and attractive condition at all times," and Section 9, the surrender covenant, indicated that Defendant would surrender the premises "in good condition and repair, reasonable and ordinary wear and tear . . . excepted."

    A.  Condition of the Premises

During Defendant's tenancy, Plaintiff became aware of various maintenance deficiencies on the Premises, and upon Defendant's surrender of the property at the expiration of the lease Plaintiff was not satisfied with its condition. Specifically, Plaintiff found deterioration of the concrete floor, damage to interior and exterior walls, corrosion of steel portions of the warehouse, dysfunction in the warehouse heating unit, and damage to paved loading and parking areas, among other deficiencies. Experts engaged by Plaintiff determined that the frequent spilling and leaking of Defendant's dialysis solution had caused the concrete floor and the metal portions of the warehouse interior to deteriorate due to the product's corrosive chemical components. In addition, the experts revealed that Defendant's daily "wet scrubbing" of the concrete floor also contributed to the deterioration of the concrete. Following Defendant's surrender of the property, Plaintiff commenced this action against Defendant to recover damages for Defendant's alleged breach of the maintenance and surrender covenants of the lease.

    B.  Plaintiff's Mitigation Efforts

In an effort to relet the Premises, Plaintiff hired a real estate broker to market the

property.  The broker expressed concerns about the condition of the interior of the Premises and stated it would be difficult to attract a new tenant without improvements.  In particular, the broker noted the deterioration of the concrete floor and the dock levelers.  As a result, Plaintiff decided to advertise to prospective tenants that necessary repairs, including replacement of the concrete floor slab, would be made prior to the commencement of any future tenancy.

On July 27, 2005, Plaintiff entered into a letter of intent ("Letter of Intent") to lease the Premises to L'Oreal.  In negotiations preceding the Letter of Intent, Plaintiff indicated that it would replace the concrete floor prior to L'Oreal's occupancy.  The Letter of Intent set a date of October 1, 2005 for the occupancy to begin and also provided for the construction of an expansion to the warehouse.  Lease negotiations ensued.

On August 8, 2005, Plaintiff notified Defendant that its efforts to mitigate damages would entail making repairs to the Premises, including removal and replacement of the concrete floor slab, and inquired whether Defendant needed further access to the Premises in connection with the litigation between them.  By reply dated August 10, Defendant demanded that the Premises be preserved pending inspection by Defendant's experts.  On August 12, L'Oreal withdrew from lease negotiations with Plaintiff and declined to lease the Premises.  The reasons for L'Oreal's withdrawal are disputed but apparently included its concerns about Plaintiff's ability to complete the necessary repairs to the property by October 1 and its objection to Plaintiff's addition to the draft lease of a contingency in the event Plaintiff could not obtain the necessary approvals for the construction of the planned expansion.  Only after Plaintiff completed the repairs to the Premises was it able to secure a long-term tenant on August 25, 2006.

C. Discovery Dispute

On December 1, 2006, the Court set initial discovery deadlines in this matter. The Order provided for service of all expert reports by January 15, 2007 and rebuttal reports by February 15, 2007. In early January, Plaintiff produced a Statement of Damages, which itemized costs incurred repairing the Premises. Additionally, the parties exchanged an initial set of expert reports. On or about February 2, Plaintiff updated its Statement of Damages, including costs incurred and estimates for anticipated future costs. Defendant disputes the adequacy of Plaintiff's Statements of Damages and has demanded an expert report on Plaintiff's damages. The Court issued an amended scheduling order on February 26, 2007, setting June 29 as the deadline for the production of any additional expert reports by Plaintiff.

On March 2, Defendant filed the motion presently before the court, asking for summary judgment on Plaintiff's claims for property damage, lost rent, and operating expenses. Defendant requests additionally or alternatively that the Court enter an order compelling Plaintiff to produce a damages report. Plaintiff filed a brief in opposition to Defendant's motion to which Defendant replied.

## II.  STANDARD FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. DISCUSSION

#### A. Defendant's Motion for Summary Judgment

##### i. Repair Damage Claims

Defendant has not met its burden of establishing the nonextistence of a genuine issue of material fact on Plaintiff's claims for repair damages. Under New Jersey law, a lease is treated like any other written contract. Ringwood Assocs., Ltd. v. Jack's of Route 23, Inc., 379 A.2d

508, 516 (N.J. Super. Ct. Law Div. 1977). The essential elements of a cause of action for breach of contract are a valid contract, defective performance by the defendant, and resulting damages. Coyle v. Englander's, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985). In an action for breach of express covenants to maintain and surrender a leased premises in a particular state of repair, the proper measure of damages is the cost of the repairs needed to return the premises to the condition specified in the lease. Winrow v. Marriott Corp., 553 A.2d 59, 60 (N.J. Super. Ct. App. Div. 1989). Moreover, "[w]hether the state of repair in which the premises are left is [in] sufficient compliance with the lessee's covenant to leave in the condition specified is a question of fact . . . varying . . . with the requirements of the covenant and the extent to which it has been complied with by the tenant." Braem v. Washington Piece Dye Works, 126 A. 461, 462 (N.J. 1924).

     Defendant argues that it is entitled to summary judgment on Plaintiff's claims for repair damages because Plaintiff has failed to produce evidence demonstrating the condition of the repaired items at the inception of the lease. A central and disputed issue of fact in this case is whether the deficiencies for which Plaintiff seeks to recover were merely "reasonable and ordinary wear and tear" or the extent to which Defendant fell short of its obligation to maintain the Premises in "a good, safe and attractive condition at all times" and to surrender it "in good condition and repair." While evidence of the condition of the Premises at the beginning of the lease might aid the trier of fact in determining what constitutes reasonable wear and tear, it is not an essential element of Plaintiff's claims such that in its absence summary judgment is warranted. Plaintiff has offered evidence of its damages on these claims in the form of the cost of repairs to return the Premises to what it considered "a good, safe and attractive condition."

Consequently, Defendant fails to meet its burden of demonstrating that Plaintiff's evidence is insufficient to establish an essential element of the claim.

Additionally, Plaintiff promised additional evidence on its repair damages in its forthcoming expert report. At the time Defendant filed the instant motion Plaintiff still had several months before the conclusion of discovery. Since that time, the Court has extended discovery still further to allow for more complete development of the factual record. As a result, Defendant's motion for partial summary judgment is premature. See Otero v. County of Monmouth, No. Civ. A. 06-3435, 2007 WL 2363821, at *1 (D.N.J. Aug. 16, 2007) (citing In re Unisys Sav. Plan Litig., 74 F.3d 420, 440 (3d Cir. 1996); Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 835 (3d Cir. 1992)) (concluding that summary judgment motion was premature where court would benefit from further development of factual record).

      ii.  Replacement Damage Claims

Defendant has also failed to meet its burden as to Plaintiff's claims for replacement damages. In an action for breach of covenants to maintain and surrender in a specified condition, a lessor can recover for the cost of replacement provided it demonstrates that total replacement was necessary. Liqui-Box Corp. v. Elkman, 570 A.2d 472, 479 (N.J. Super. Ct. App. Div. 1990). Replacement damages are typically determined by the amount required to restore the leased property to the condition it was in at the start of the tenancy, minus depreciation. S.D.G. v. Inventory Control Co., 429 A.2d 394, 397 (N.J. Super. 1981).

Defendant contends that because Plaintiff has not produced evidence of the condition of the replaced items at the start of the tenancy or depreciation of those items due to ordinary wear and tear, Plaintiffs cannot prevail as a matter of law. Defendant has not, however, demonstrated

that Plaintiff's evidence is insufficient to establish an essential element of Plaintiff's case. Plaintiff's Statements of Damages, produced in January and February, account for costs incurred in replacing items on the Premises. While at the time Defendant filed the instant motion, Plaintiff had not produced evidence of depreciation for the replaced items, it offered to do so in its next expert report. Furthermore, Plaintiff has produced evidence that would permit a reasonable fact finder to conclude that the replacements were necessary, including an expert report concerning the concrete floor and certifications from contractors regarding the heating unit, dock levelers, and overhead doors. Accordingly, summary judgment on Plaintiff's replacement damage claims is not warranted at this time.

        iii. Claim for Lost Rent and Operating Expenses

Defendant is not entitled to summary judgment on Plaintiff's claim for lost rent and operating expenses because Plaintiff has adduced evidence from which a reasonable fact finder could conclude that its mitigation efforts were adequate. Under New Jersey law, a commercial lessor may recover for lost rental income resulting from a tenant's breach of a lease; however, the recovery is subject to the duty to mitigate. River Road Assocs. v. Chesapeake Display & Packaging Co., Inc., 104 F. Supp. 2d 418, 425 (D.N.J. 2000) (citing McGuire v. City of New Jersey, 593 A.2d 309, 315-16 (N.J. 1991)). The reasonableness of a lessor's efforts to mitigate is a question of fact. Jaasma v. Shell Oil Co., 412 F.3d 501 (3d Cir. 2005) (citing Harrison Riverside Ltd. P'ship v. Eagle Affiliates, Inc., 707 A.2d 490, 493 (N.J. 1998)).

Defendant argues that, even though mitigation is typically an issue for the trier of fact, the uncontroverted facts show that Plaintiff's mitigation efforts were unreasonable because it would have had a tenant twelve months sooner if not for its own misconduct. Defendant offers the

Certification of Edward J. Dudzinski, L'Oreal's representative, which states that Plaintiff initially told L'Oreal that no variance would be needed to expand the warehouse, and when it became apparent that a variance might be required, L'Oreal withdrew from the Letter of Intent. Nevertheless, construing the evidence in the light most favorable to Plaintiff reveals triable issues of fact as to the reasons L'Oreal opted not to lease the Premises. In particular, Plaintiff offers the Certification of Louis Battagliese, Jr., Plaintiff's real estate broker, who stated that in addition to objecting to the addition of a contingency relating to the planned warehouse expansion, L'Oreal declined to lease the Premises because of the risk that the repairs would not be completed in time for L'Oreal to occupy the Premises by the date set in the Letter of Intent. In light of these disputed facts, Plaintiff's claim for lost rent and operating expenses survives summary judgment.

  B. Defendant's Motion to Compel

  This Court will deny Defendant's motion for an order compelling Plaintiff to produce a damages report. Defendant filed this motion in March 2007. The February 26, 2007 Amended Scheduling Order set June 29, 2007 as the deadline for Plaintiff to serve Defendant with any additional expert reports. Plaintiff responded to Defendant's motion to compel by indicating that it had retained Parente Randolph to prepare a damages report, which it would produce prior to June 29. Since then, the Court extended the discovery deadline again to October 15, so any unfairness the June 29 deadline may have caused Defendant has been remedied by the more than three months of additional discovery. Since in the time since Defendant filed its motion, there has been no indication that Plaintiff has failed to comply with Defendant's requests for evidence relating to damages or the discovery schedule set forth by this Court, Defendant's motion will be denied.

## IV.  CONCLUSION

Based on the foregoing reasoning, the Court will deny Defendant's partial motion for summary judgment.  The Court will further deny Defendant's motion for an order compelling Plaintiff to produce a damages report.  An accompanying Order shall issue today.


Dated: October 16, 2007                                                   s/ Robert B. Kugler
                                                                                        ROBERT B. KUGLER
                                                                                        United States District Judge